# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| FABRIZIO MORELLI, derivatively on behalf of COMPASS MINERALS INTERNATIONAL, INC., | Civil Action No. |
| Plaintiff, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, JENNY HOOD, RICHARD P. DEALY, JON CHISHOLM, JILL GARDINER, GARETH JOYCE, MELISSA M. MILLER, JOSEPH E. REECE, LORI A. WALKER, and SHANE WAGNON, | |
| Defendants, | |
| and | |
| COMPASS MINERALS INTERNATIONAL, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Fabrizio Morelli ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Compass Minerals International, Inc. ("Compass Minerals" or the "Company"), files this Verified Shareholder Derivative Complaint against Kevin S. Crutchfield ("Crutchfield"), Edward C. Dowling, Jr. ("Dowling"), Lorin Crenshaw ("Crenshaw"), Jenny Hood ("Hood"), Richard P. Dealy ("Dealy"), Jon Chisholm ("Chisholm"), Jill Gardiner ("Gardiner"), Gareth Joyce ("Joyce"), Melissa M. Miller ("Miller"), Joseph E. Reece ("Reece"), Lori A. Walker ("Walker"), Allan R. Rothwell ("Rothwell"), and Shane Wagnon ("Wagnon")

(collectively, the "Individual Defendants," and together with Compass Minerals, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Compass Minerals, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and for contribution against Defendants Crutchfield, Dowling, Crenshaw, and Hood under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Compass Minerals, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Compass Minerals' current and former directors and officers from November 29, 2023 until March 22, 2024, both dates inclusive (the "Relevant Period").

2.      Compass Minerals, headquartered in Overland Park, Kansas, provides essential minerals, such as salt products for roadway deicing, and plant nutrition products to improve the quality and yield of crops. The Company's products have numerous other applications across the consumer, industrial, chemical, and agricultural industries as well, including "next-generation fire

retardants [that] help to slow, stop and prevent wildfires through the use of high-performing and environmentally friendly products."

3.      In early May 2023, Compass Minerals completed the purchase of Fortress North America, LLC ("Fortress"), which the Company called "a next-generation fire retardant company dedicated to developing and producing a portfolio of magnesium chloride-based aerial and ground fire retardant products to help combat wildfires." During the third quarter of fiscal 2023, Fortress entered into an agreement with the U.S. Forest Service ("USFS") to supply product and provide associated services for the 2023 fire season. The USFS was Fortress's only primary client for that year.

4.      Throughout the Relevant Period, in breach of their fiduciary duties owed to Compass Minerals, the Individual Defendants willfully or recklessly caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Individual Defendants were improperly interested in increasing their future compensation by seeking shareholder approval of an amendment to increase the number of shares available under the Company's 2020 Incentive Plan (the "Amended Incentive Plan"); (4) the Company failed to maintain internal controls; and (5) in light of the above, the Individual Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

5.     On March 25, 2024, the truth began to emerge, before market hours, when Compass Minerals issued a press release that revealed that the Company would not secure a contract with USFS to supply magnesium chloride-based aerial fire retardants for the 2024 fire season.

6.     On this news, the price per share of Compass Minerals stock fell $3.00, or 17.09%, from closing at a price of $17.55 per share on March 22, 2024, to close at a price of $14.55 per share on March 25, 2024. The price per share of Compass Minerals stock fell $0.86 the following trading day, from closing at a price of $14.55 per share on March 25, 2024, to close at a price of $13.69 per share on March 26, 2024.

7.     In light of the Individual Defendants' misconduct—which has subjected the Company and various of its former and current officers and directors to a putative federal securities class action lawsuit filed against the Company and Defendants Crutchfield, Dowling, Crenshaw, and Hood in the United States District Court for the District of Kansas, captioned *Valentine v. Compass Minerals International, Inc. et al.*, case no. 2:24-CV-02165 ("Securities Class Action"), and which has further subjected the Company to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend many millions of dollars. The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

8.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, the Company's directors' receipt of material benefits due to the Amended Incentive Plan, of the collective engagement in fraud and misconduct

by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action, of the officers' and directors' liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Company's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because Compass Minerals is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, one or more of the Defendants either resides or maintains executive offices in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## PARTIES

### Plaintiff

13.     Plaintiff is a current shareholder of Compass Minerals. Plaintiff has continuously held shares of Compass Minerals common stock at all relevant times.

### Nominal Defendant Compass Minerals

14.     Compass Minerals is a Delaware corporation with principal executive offices at 9900 W. 109TH Street, Suite 100, Overland Park, Kansas, 66210.  Compass Minerals common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CMP."

### Defendant Crutchfield

15.     Defendant Crutchfield served as the Company's President, CEO, and as a Company director from May 2019 until January 2024. According to the proxy statement that the Company filed with the SEC on January 29, 2024 (the "2024 Proxy Statement"), as of January 19, 2024, Defendant Crutchfield beneficially owned 398,049 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Crutchfield owned approximately $8.4 million worth of Compass Minerals stock as of that date.

16.     For the fiscal year ended September 30, 2023 (the "2023 Fiscal Year"), Defendant Crutchfield received $9,173,738 in total compensation from the Company. This included $1,124,000 in salary, $5,997,970 in stock awards, $1,921,113 in non-equity incentive plan compensation, and $130,655 in all other compensation.

### Defendant Dowling

17.     Defendant Dowling has served as a Company director since March 2022 and has served as the Company's President and CEO since January 2024. He also served as a member of the Environmental, Health, Safety and Sustainability Committee. According to the 2024 Proxy

Statement, as of January 19, 2024, Defendant Dowling beneficially owned 9,702 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Dowling owned approximately $205,294 worth of Compass Minerals stock as of that date.

18.   For the 2023 Fiscal Year, Defendant Dowling received $232,618 in total compensation from the Company. This included $13,125 in fees earned or paid in cash and $219,493 in stock awards.

**Defendant Crenshaw**

19.   Defendant Crenshaw served as the Company's Chief Financial Officer ("CFO") from December 2021 until June 7, 2024. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Crenshaw beneficially owned 13,026 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Crenshaw owned approximately $275,630 worth of Compass Minerals stock as of that date.

20.   For the 2023 Fiscal Year, Defendant Crenshaw received $2,684,768 in total compensation from the Company. This included $553,177 in salary, $75,000 in bonuses, $1,557,141 in stock awards, $418,723 in non-equity incentive plan compensation, and $80,727 in all other compensation.

**Defendant Hood**

21.   Defendant Hood has served as the Company's Chief Supply Chain Officer since January 2024. Previously, she served as the Company's Vice President of Supply Chain from September 2019 until August 2023 and as Head of Fire Retardants from August 2023 until January 2024.

**Defendant Chisholm**

22.     Defendant Chisholm served as a Company director from November 2022 until March 5, 2024.

**Defendant Gardiner**

23.     Defendant Gardiner served as a Company director from May 2023 until March 5, 2024. She also served as a member of the Audit Committee and as a member of the Environmental, Health, Safety and Sustainability Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Gardiner beneficially owned 4,953 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Gardiner owned approximately $104,805 worth of Compass Minerals stock as of that date.

24.     For the 2023 Fiscal Year, Defendant Gardiner received $136,619 in total compensation from the Company, consisting entirely of $136,619 in stock awards.

**Defendant Dealy**

25.     Defendant Dealy has served as a Company director since May 2022. He also serves as a member of the Audit Committee and as the Chair of the Compensation Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Dealy beneficially owned 8,585 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Dealy owned approximately $181,659 worth of Compass Minerals stock as of that date.

26.     For the 2023 Fiscal Year, Defendant Dealy received $224,484 in total compensation from the Company. This included $25,625 in fees earned or paid in cash and $198,859 in stock awards.

**Defendant Joyce**

27.     Defendant Joyce has served as a Company director since October 2021. He also serves as a member of the Environmental, Health, Safety and Sustainability Committee and as a member of the Nominating and Corporate Governance Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Joyce beneficially owned 9,220 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Joyce owned approximately $195,095 worth of Compass Minerals stock as of that date.

28.     For the 2023 Fiscal Year, Defendant Joyce received $220,061 in total compensation from the Company. This included $23,750 in fees earned or paid in cash and $196,311 in stock awards.

**Defendant Miller**

29.     Defendant Miller has served as a Company director since July 2022. She also serves as a member of the Environmental, Health, Safety and Sustainability Committee and as a member of the Nominating and Corporate Governance Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Miller beneficially owned 8,886 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Miller owned approximately $188,028 worth of Compass Minerals stock as of that date.

30.     For the 2023 Fiscal Year, Defendant Miller received $221,652 in total compensation from the Company. This included $23,750 in fees earned or paid in cash and $197,902 in stock awards.

**Defendant Reece**

31.     Defendant Reece has served as a Company director since March 2019. He also serves as the Chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Reece beneficially owned 44,099 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Reece owned approximately $933,135 worth of Compass Minerals stock as of that date.

32.     For the 2023 Fiscal Year, Defendant Reece received $400,085 in total compensation from the Company, consisting entirely of $400,085 in stock awards.

**Defendant Walker**

33.     Defendant Walker has served as a Company director since 2015. She also serves as the chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee. According to the 2024 Proxy Statement, as of January 19, 2024, Defendant Walker beneficially owned 23,277 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 19, 2024 was $21.16, Defendant Walker owned approximately $492,541 worth of Compass Minerals stock as of that date.

34.     For the 2023 Fiscal Year, Defendant Walker received $238,207 in total compensation from the Company. This included $28,125 in fees earned or paid in cash and $210,082 in stock awards.

**Defendant Wagnon**

35.     Defendant Wagnon has served as a Company director since November 2022.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

36.     By reason of their positions as officers, directors, and/or fiduciaries of Compass Minerals and because of their ability to control the business and corporate affairs of Compass Minerals, the Individual Defendants owed Compass Minerals and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Compass Minerals in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Compass Minerals and its shareholders so as to benefit all shareholders equally.

37.     Each director and officer of the Company owes to Compass Minerals and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

38.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Compass Minerals, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

39.     To discharge their duties, the officers and directors of Compass Minerals were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

40.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable

violation of their obligations as directors and officers of Compass Minerals, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Compass Minerals' Board at all relevant times.

41.    As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

42.    To discharge their duties, the officers and directors of Compass Minerals were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Compass Minerals were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Kansas, and the United States,

and pursuant to Compass Minerals' own Code of Ethics and Business Conduct (the "Code of Ethics");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Compass Minerals conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Compass Minerals and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Compass Minerals' operations would comply with all applicable laws and Compass Minerals' financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

43.     Each of the Individual Defendants further owed to Compass Minerals and the shareholders the duty of loyalty requiring that each favor Compass Minerals' interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

44.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Compass Minerals and were at all times acting within the course and scope of such agency.

45.     Because of their advisory, executive, managerial, directorial, and controlling positions with Compass Minerals, each of the Individual Defendants had access to adverse, non-public information about the Company.

46.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Compass Minerals.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

47.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

48.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants'

violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

49.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Compass Minerals was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

50.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

51.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Compass Minerals and was at all times acting within the course and scope of such agency.

## COMPASS MINERALS' CODE OF ETHICS

52.     The Code of Ethics states that the Code of Ethics applies to all employees, officers, and directors of the Company. The Code of Ethics states the following regarding maintaining accurate books and records:

> As a publicly traded company, we have the responsibility to protect the interest of our stockholders. Acting with responsibility and transparency goes hand in hand with our Core Values of Integrity and Value Creation. We create value for our stockholders by maintaining accurate business records and ensuring our financial statements accurately reflect our business, our earnings and our financial condition.

53.     Regarding the integrity of the Company's financial statements, the Code of Ethics states the following:

> The integrity of our financial statements is at the center of our integrity as a company. Any actual or perceived irregularities in our financial statements must be reported to the Chief Financial Officer, Corporate Controller, General Counsel, Audit Committee Chair or the Ethics Hotline.
>
> * * *
>
> As a public company, it is critical that all external communications with investment analysts, the media, and investors be consistent and accurate. Public statements on our company's behalf must be made only by the appropriate source within the company.

54.     In violation of the Code of Ethics, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, and violations of the Exchange Act. Also, in violation of the Code of Ethics, the Individual Defendants failed to maintain internal controls, failed to obtain waivers and/or failed to disclose obtained waivers of violating the Code of Ethics, and failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Codes of Ethics.

## COMPASS MINERALS' AUDIT COMMITTEE CHARTER

55.     According to the Audit Committee Charter, the main function of the Audit Committee is to assist the Board with its oversight responsibilities pertaining to: (i) the integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the independent auditor's qualifications and independence; and (iv) the performance of the Company's internal audit function and the independent auditor.

56.     The Audit Committee Charter delineates the duties and responsibilities of the committee as follows:

1.  The Committee may, in its discretion, conduct or authorize investigations into any matters within the scope of its responsibilities and powers. The Committee will have access to all books, records, and employees of the Company.

2.  The Committee will discuss with management and the independent auditor any related-party transactions brought to the Company's attention which could reasonably be expected to have a material impact on the Company's financial statements or on the independence of any members of the Board.

3.  The Committee will discuss with management the Company's overall policies with respect to its risk identification, assessment and management processes. The Committee will discuss with management the Company's significant financial risk exposures and the actions management has taken to limit, monitor or control such exposures.

4.  The Committee will discuss with the Company's General Counsel or outside counsel any legal matters brought to the Committee's attention that could reasonably be expected to have a material impact on the Company's financial statements.

5.  The Committee will request assurances from the Company's management, the Company's internal auditor and the independent auditor that the Company's foreign subsidiaries and foreign affiliated entities are in conformity with applicable legal requirements, including disclosure of insider and affiliated party transactions.

6.  The Committee will periodically review the Company's insurance programs, including those relating to property, general liability and director and officer liability, with the proposed director and officer insurance program to be presented to the full Board for approval.

7.  The Committee will review and discuss with the Company's management the Company's procedures for compliance with applicable laws and regulations.

8.  The Committee will annually review and approve the general use of swap transactions by the Company and its subsidiaries.

9.  The Committee will review and discuss with management, tax policies, accruals, developments, disputes and other related matters.

10. The Committee will sponsor periodic training for the Board on audit, accounting, financial, compliance and related matters.

11. The Committee will, at least annually, evaluate its own performance including its compliance with this Charter, and report the results of such evaluation, including any recommended changes, to the Board.

12. The Committee will, at least annually, review and reassess this Charter and submit any recommended changes for approval by the Board.

57.     In violation of the Audit Committee Charter, the Individual Defendants (as key officers and members of the Company's Board) conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, gross mismanagement, abuse of control, waste of corporate assets, and violations of the Exchange Act. Moreover, in violation of the Audit Committee Charter, the Individual Defendants failed to maintain the accuracy of the Company's records and reports, comply with laws and regulations, act in good faith and diligence without misstating, misrepresenting, or omitting material facts, and properly report violations of the Audit Committee Charter.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

58.     Compass Minerals, headquartered in Overland Park, Kansas, provides essential minerals, such as salt products for roadway deicing, and plant nutrition products to improve the

quality and yield of crops. The Company's products have numerous other applications across the consumer, industrial, chemical, and agricultural industries as well, including "next-generation fire retardants [that] help to slow, stop and prevent wildfires through the use of high-performing and environmentally friendly products."

59.     In early May 2023, Compass Minerals completed the purchase of Fortress, which the Company called "a next-generation fire retardant company dedicated to developing and producing a portfolio of magnesium chloride-based aerial and ground fire retardant products to help combat wildfires." During the third quarter of fiscal 2023, Fortress entered into an agreement with the USFS to supply product and provide associated services for the 2023 fire season. The USFS was Fortress's only primary client for that year.

60.     Throughout the Relevant Period, in breach of their fiduciary duties owed to Compass Minerals, the Individual Defendants willfully or recklessly caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Individual Defendants were improperly interested in increasing their future compensation by seeking shareholder approval of an amendment to increase the number of shares available under the Company's 2020 Incentive Plan (the "Amended Incentive Plan"); (4) the Company failed to maintain internal controls; and (5) in light of the above, the Individual Defendants' statements about the Company's business,

operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**False and Misleading Statements**

*November 29, 2023 2023 10-K*

61.     On November 29, 2023, the Company filed its annual report on Form 10-K with the SEC for the 2023 Fiscal Year (the "2023 10-K"), which was signed by Defendants Crutchfield, Crenshaw, Dealy, Dowling, Joyce, Miller, Reece, Wagnon, and Walker. Attached to the 2023 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Crutchfield and Crenshaw attesting to its accuracy.

62.     The 2023 10-K stated the following about Fortress and the Company's fire retardants, in relevant part:

> Fire retardants are a critical tool for helping slow, stop and prevent wildfires by altering fuels (e.g., vegetation) to make them less flammable. Aerial fire retardant is typically applied ahead of an active wildland fire to stop or slow its spread, in order to allow ground-crew to safely build a fire line. Retardants can be applied aerially via fixed or rotor wing aircraft. Ground applied retardants are used to annually pretreat fire-prone areas such as utility and transportation rights-of-way in order to reduce their potential for ignition. These retardants are applied by ground-crews using standard fire engines or dedicated ground-applied retardant units.

> Fortress is our recently acquired fire retardant company dedicated to developing and producing a portfolio of environmentally friendly next-generation aerial and ground-applied fire retardant products to help prevent and combat wildfires. ***Fortress' approved long-term aerial and ground-applied fire retardant formulations have been developed using magnesium chloride supplied from our Ogden facility.*** We plan to further expand our suite of retardants, which provide unique properties for fighting wildfires and abating fire risk.

> ***Our fire retardant business currently has one primary customer, the USFS, and we supply them with USFS-qualified fire retardant***. Fortress has the only alternative to fertilizer-based fire retardants and is the first entrant to the fire retardant industry in over 20 years to have aerial products added to the USFS Qualified Product List. ***The USFS testing is a standard that many municipalities, states and countries have adopted for ensuring fire retardant is effective, safe and environmentally friendly.*** There is currently one other supplier of aerial fire retardants in the markets we have entered as the barriers to enter the fire retardant

industry are high. As of the date of this report, we have generated all of our fire retardant revenue in the U.S. and it is not material in comparison to our Salt and Plant Nutrition segments.

(Emphasis added).

63.     The 2023 10-K provided the following risk disclosure regarding Fortress and fire retardants:

> ***We may not successfully implement our strategies.***
>
> Our success depends, to a significant extent, on successful implementation of our business strategies, including the development of our lithium salt or lithium chloride brine and LCE resources, ***the successful commercialization of Fortress North America's portfolio of next generation fire retardants***, our cost savings initiatives, our continuous improvement initiatives and any other strategies described in the "Business" section of this report. ***We cannot assure that we will be able to successfully implement our strategies or, if successfully implemented, we may not realize the expected benefits of our strategies***. Recently, we have suspended indefinitely any further investment in our lithium project beyond certain already committed items associated with the early stages of construction of our commercial scale demonstration unit and are considering seeking partners at the project level with an aim of reducing our share of capital costs and lowering execution risk in the event that the project is restarted. Any continued investment or such partnership would be conditioned on the achievement of an acceptable and predictable regulatory framework in Utah governing the production of lithium on the Great Salt Lake. We cannot make any assurance that we will continue investments in our lithium project or whether we will enter into any partnership, and if so, on what terms.

(Emphasis added).

64.     The 2023 10-K provided the following risk disclosure regarding Fortress, fire retardants, and competition:

> ***Our products face strong competition and if we fail to successfully attract and retain customers and invest in capital improvements, productivity, quality improvements and product development, sales of our products could be adversely affected.***
>
> We encounter strong competition in many areas of our business and our competitors may have significantly more financial resources than we do. Competition in our product lines is based on a number of factors, including product quality and performance, logistics (especially in Salt distribution), brand reputation, price and

quality of customer service and support. Many of our customers attempt to reduce the number of vendors from which they purchase in order to increase their efficiency. To remain competitive, we need to invest in manufacturing, productivity, product innovation, marketing, customer service and support and our distribution networks. We may not have sufficient resources to continue to make such investments or maintain our competitive position. We may have to adjust our prices, strategy, product innovation, distribution or marketing efforts to stay competitive. ***In addition, our fire retardant business currently has one primary customer, the USFS. If the USFS were to choose not to renew commercial agreements with us or reduce their spend on our fire retardant products, that business would be adversely affected.***

(Emphasis added).

***2024 Proxy Statement***

65.    On January 29, 2024, the Company filed the 2024 Proxy Statement with the SEC. Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, Gardiner, and Chisholm solicited the 2024 Proxy Statement, pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

66.    The 2024 Proxy Statement called for the Company's shareholders to vote to, *inter alia*: (1) re-elect Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker to the Board; (2) ratify the selection of KPMG LLP as the Company's independent registered public accounting firm for the fiscal year ending September 30, 2024 ("2024 Fiscal Year"); (3) approve, on an advisory basis, the compensation of the Company's named executive officers; and (4) approve the Amended Incentive Plan to increase the number of common shares available under the 2020 Incentive Award Plan by 3,000,000. As disclosed in the 2024 Proxy Statement, as of January 19, 2024, there were 819,454 shares of common stock remaining which were available to be issued under the 2020 Incentive Award Plan.

67.    The 2024 Proxy Statement noted that if the Compass Minerals shareholders approved the Amended Incentive Plan, it would "be sufficient for awards made for at least two years based on historical practices for our core business…" Further, the 2024 Proxy Statement

noted that approval of the Amended Incentive Plan will cause "a maximum of 6,727,933 shares of common stock" to be "reserved for issuance under the Amended Plan, of which 6,600,000 may be granted as incentive stock options…"

68.    Regarding the Board's "Role in Risk Oversight," the 2024 Proxy Statement stated the following, in relevant part:



69.    Regarding the Code of Ethics, the 2024 Proxy Statement stated the following, in relevant part:

> We have adopted a Code of Ethics and Business Conduct (our "Code of Ethics") for our directors, officers and employees, which is grounded in our Core Values. Our Code of Ethics is reviewed each year for appropriate updates. Directors, officers and salaried employees are asked to annually certify their understanding of and compliance with our Code of Ethics.
>
> Only our Board or a designated Board committee may grant waivers of our Code of Ethics for our directors and executive officers. We intend to disclose any changes in, or waivers from, our Code of Ethics by posting such information on www.compassminerals.com or by filing a Current Report on Form 8-K, in each case if such disclosure is required by SEC or NYSE rules. No waivers of our Code of Ethics were granted to directors or officers in fiscal 2023.

Our Code of Ethics is made available to our employees in English and Canadian French and is available on our website.

70.     Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, Gardiner, and Chisholm caused the 2024 Proxy Statement to be false and misleading by failing to disclose, *inter alia*, that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Individual Defendants were improperly interested in increasing their future compensation by seeking shareholder approval of an amendment to increase the number of shares available under the Company's 2020 Incentive Plan (the "Amended Incentive Plan"); (4) the Company failed to maintain internal controls; and (5) in light of the above, the Individual Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

71.     The 2024 Proxy Statement was also materially false and misleading because, despite assertions to the contrary, the Company's Code of Ethics was not followed, as evidenced by the Individual Defendants (1) making and/or causing the Company to make the numerous false and misleading statements and omissions alleged herein; and (2) failing to report violations of the Code of Ethics. Further, the 2024 Proxy Statement was materially false and misleading because, despite assertions to the contrary, the Board was not adequately performing its risk oversight functions.

72.     As a result of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, Gardiner, and Chisholm causing the 2024 Proxy Statement to be false and misleading, Company shareholders voted, *inter alia*, to: (1) re-elect Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker to the Board, thereby allowing them to continue to breach their fiduciary duties to the Company; (2) ratify the selection of KPMG LLP as the Company's independent registered public accounting firm for the 2024 Fiscal Year; (3) approve named executive officer compensation on an advisory, non-binding basis; and (4) approve the Amended Incentive Plan.

73.     As a result of the shareholders approving the Amended Incentive Plan, there were an additional 3,000,000 shares available for issuance under the 2020 Incentive Plan. The Individual Defendants, including many of whom are current directors of the Company, received material personal benefits that they otherwise would not have received but for the issuance of the false and misleading 2024 Proxy Statement and the shareholders approving the Amended Incentive Plan. Moreover, certain of the Individual Defendants continue to receive material personal benefits in the form of stock awards and will continue to receive material personal benefits in the form of stock awards pursuant to the Amended Incentive Plan in the future.

### *February 8, 2024 Form 10-Q*

74.     On February 8, 2024, the Company filed its quarterly report on Form 10-Q for the first quarter of 2024 ended December 31, 2023 ("Q1 2024 10-Q"). The Q1 2024 10-Q contained SOX certifications which were signed by Defendants Dowling and Crenshaw. The Q1 2024 10-Q featured the same risk disclosures as in the 2023 10-K above.

### *February 8, 2024 Earnings Conference Call*

75.     Also on February 8, 2024, the Company hosted an earnings conference call with

analysts and investors to discuss the Company's financial performance for the first quarter of 2024.

During the call, Defendant Crenshaw stated the following about Fortress and USFS contracts:

> Regarding Fortress, subsequent to our last earnings call, which occurred in November, the U.S. Forest Service changed the solicitation contract requirements for the calendar '24 contract and this has resulted in delays in the negotiation and finalization of a contract for the '24 fire season, which starts in the April, May timeframe. ***We continue to expect to have a finalized contract prior to deployment for the upcoming fire season.*** As a reminder, we do not have anything currently baked into our '24 guidance for the calendar '24 U.S. Forest Service contract. Accordingly, we are leaving guidance unchanged with respect to what we've included in for Fortress at this time. Once our contract is finalized, we will adjust our guidance appropriately.

> (Emphasis added).

76.     Also, during the February 8, 2024 earnings conference call, an analyst inquired

about the reasons for the delay in securing a contract between the Company and the USFS, asking

the following question:

> And then lastly, you talked about some changes in requirements from the US Forest Service affecting your Fortress business. But I couldn't tell whether you thought that it actually delayed anything. What you said is you expected to have your paperwork in order before the 2024 fire season. So if that's true, does the delay really make no difference?

77.     Defendant Hood responded by stating the following:

> So the delay, just to give a little bit more color on that. The original solicitation from the US Forest Service was issued in late September. It took them until mid December to issue a final revised solicitation, and the solicitation deadline was then January 10th. So it absolutely pushed back the contracting process, in total. However, we are pleased since January 10th when we were able to start the negotiations, we're pleased with the progress and the engagement that we're seeing from US Forest Service. Keep in mind that previously the Forest Service was dealing with one sole source supplier for over two decades. So thinking about how to integrate another supplier, both from a contractual standpoint as well as in the field has been quite challenging for them, but however, we are supporting them in those efforts. And again, we're pleased with the engagement that we've received since the submission deadline.

78.    Defendant Crenshaw elaborated:

And Jeff, from an earnings perspective, you're exactly right. There's no change. We entered into this year not assuming EBITDA for 2024 for Fortress until we get the contract. When we get that contract, which we fully expect, you should expect us to raise our guidance to reflect the profitability. And so we have been conservative in not speculating, but you should expect that we will raise our guidance. And there's no change there, it's just a little bit delayed.

79.    The above statements in ¶¶61-64 and 74-78 were materially false and misleading because they failed to disclose, *inter alia*, that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Individual Defendants were improperly interested in increasing their future compensation by seeking shareholder approval of an amendment to increase the number of shares available under the Company's 2020 Incentive Plan (the "Amended Incentive Plan"); (4) the Company failed to maintain internal controls; and (5) in light of the above, the Individual Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

80.    On March 25, 2024, the truth began to emerge, before market hours, when Compass Minerals issued a press release, titled "Compass Minerals Announces the Company Will Not Secure a USFS Contract to Supply Magnesium Chloride-Based Aerial Fire Retardants for the 2024 Fire Season," that revealed that the Company would not secure a contract with USFS to supply magnesium chloride-based aerial fire retardants for the 2024 fire season. The press release fully revealed:

Compass Minerals (NYSE: CMP), *a leading global provider of essential minerals, today announced that the U.S. Forest Service (USFS) has informed the company that it will not be entering into a contract for the use of magnesium chloride-based aerial fire retardants for the 2024 fire season.*

During *scheduled winter airtanker inspections as part of the USFS' Integrated Operational Field Evaluation (I-OFE), it was discovered that certain airtankers that had flown Fortress North America's (Fortress') proprietary, magnesium chloride-based aerial fire retardants revealed significant signs of corrosion in areas where build-up of the retardant had occurred. The findings from this more extensive inspection raised aircraft safety concerns,* prompting the USFS' decision to inform Compass Minerals on March 22, 2024, that it would be "unable to define the scope and associated terms and conditions of a new contract" with the company until the National Transportation Safety Board (NTSB) and National Institute of Standards and Technology (NIST) conducted a coordinated, independent assessment of the findings.

*"While we are disappointed with the findings of the initial inspection, we share the USFS' prioritization of safety above all other factors,"* said Edward C. Dowling Jr., president and CEO. "As we work collaboratively with the USFS, NTSB and NIST on the more detailed assessment to be conducted, we have to assume based on this new information *that Fortress' proprietary, magnesium chloride-based aerial fire-retardant formulation will not be utilized for the foreseeable future in the fight against wildfires."*

As previously announced, in December 2022, Fortress became the first new company in over two decades to have long-term aerial fire retardants added to the USFS' Qualified Product List (QPL). Fortress' FR-100 Powder and FR-200 Liquid Concentrate products met and exceeded the USFS' rigorous testing criteria in such categories as environmental effects and toxicity to aquatic and mammalian species, corrosion on a variety of aircraft metals, burn retardation efficacy and the completion of a live wildfire operational field evaluation. In May 2023, Fortress entered into a contract with the USFS to provide up to five mobile-deployed fire-retardant air tanker bases during the 2023 wildfire season. The company was in the process of negotiating a USFS contract for the 2024 wildfire season when the new corrosion concerns were identified.

The company is currently working to achieve full qualification of proprietary, non-magnesium chloride-based aerial fire-retardant products.

(Emphasis added).

81.     On this news, the price per share of Compass Minerals stock fell $3.00, or 17.09%, from closing at a price of $17.55 per share on March 22, 2024, to close at a price of $14.55 per

share on March 25, 2024. The price per share of Compass Minerals stock fell $0.86 the following trading day, from closing at a price of $14.55 per share on March 25, 2024, to close at a price of $13.69 per share on March 26, 2024.

## DAMAGES TO COMPASS MINERALS

82.     As a direct and proximate result of the Individual Defendants' conduct, Compass Minerals will lose and expend many millions of dollars.

83.     Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution of or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

84.     Such expenditures also include, but are not limited to, fees, costs, and any payments for resolution of or to satisfy judgments associated with any other lawsuits filed against the Company or the Individual Defendants based on any misconduct alleged herein and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

85.     Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

86.     As a direct and proximate result of the Individual Defendants' conduct, Compass Minerals has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

## DERIVATIVE ALLEGATIONS

87.     Plaintiff brings this action derivatively and for the benefit of Compass Minerals to

redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Compass Minerals, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, for violations of Section 14(a) of the Exchange Act, and for contribution under Sections 10(b) and 21D of the Exchange Act.

88.     Compass Minerals is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

89.     Plaintiff is, and has been at all relevant times, a shareholder of Compass Minerals. Plaintiff will adequately and fairly represent the interests of Compass Minerals in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

90.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

91.     A pre-suit demand on the Board of Compass Minerals is futile and, therefore, excused.  At the time of filing of this complaint, the Board consists of the following eight individuals: Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker (the "Director Defendants") and non-party Vance O. Holtzman (together with the Director Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to four of the eight Directors that were on the Board at the time of the filing of this complaint.

92.     Demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the schemes they engaged in knowingly or recklessly to cause the Company to make false and misleading statements and omissions of material fact, which renders the Director Defendants unable to

impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the schemes.

93.     The Director Defendants solicited the 2024 Proxy Statement to call for a shareholder vote to, *inter alia*, re-elect themselves to the Board, thus allowing them to continue breaching their fiduciary duties to Compass Minerals.

94.     In addition, the Director Defendants caused the 2024 Proxy Statement to call for a shareholder vote to approve the Amended Incentive Plan, which increased the amount of shares available under the Incentive Plan by 3,000,000. The misrepresentations and omissions set forth herein were material to shareholders in voting to approve the Amended Incentive Plan who would not have approved the Amended Incentive Plan, had they been informed about the Individual Defendants' misconduct. Before the shareholders approved the Amended Incentive Plan at the annual meeting of stockholders of Compass Minerals on March 5, 2024, 819,545 shares remained available for future issuance under the 2020 Incentive Plan. After the shareholders approved the Amended Incentive Plan, there were an additional 3,000,000 shares available for issuance under the Amended Incentive Plan. For this reason, the Individual Defendants, including the Director Defendants, received material personal benefits that they otherwise would not receive but for from the issuance of the false and misleading 2024 Proxy Statement and the shareholders approving the Amended Incentive Plan that increased the number of shares available under the 2020 Incentive Plan. As such, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

95.     In complete abdication of their fiduciary duties, the Director Defendants either knowingly or recklessly participated in causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company

appear more profitable and attractive to investors. Moreover, the Director Defendants caused the Company to fail to maintain adequate internal controls. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

96.     Additional reasons that demand on Defendant Dowling is futile follow. Defendant Dowling has served as a Company director since March 2022 and has served as the Company's President and CEO since January 2024. Defendant Dowling has received and continues to receive compensation for his role as a director and as the Company's highest officer. Furthermore, he solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy, Joyce, Miller, Reece, Wagnon, and Walker, and himself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director and as the Company's highest officer, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duty to protect corporate assets. He is also a defendant in the Securities Class Action. Also, Defendant Dowling signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Dowling is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Dowling breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

97.     Additional reasons that demand on Defendant Dealy is futile follow. Defendant Dealy has served as a Company director since May 2022. He also serves as a member of the Audit Committee and as the Chair of the Compensation Committee. Defendant Dealy has received and continues to receive compensation for his role as a director. Furthermore, he solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dowling, Joyce, Miller, Reece, Wagnon, and Walker, and himself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duty to protect corporate assets. Also, Defendant Dealy signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Dowling is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Dealy breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

98.     Additional reasons that demand on Defendant Joyce is futile follow. Defendant Joyce has served as a Company director since October 2021. He also serves as a member of the Environmental, Health, Safety and Sustainability Committee and as a member of the Nominating and Corporate Governance Committee. Defendant Joyce has received and continues to receive compensation for his role as a director. Furthermore, he solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy,

Dowling, Miller, Reece, Wagnon, and Walker, and himself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duty to protect corporate assets. Also, Defendant Joyce signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Joyce is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Joyce breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

99.     Additional reasons that demand on Defendant Miller is futile follow. Defendant Miller has served as a Company director since July 2022. She also serves as a member of the Environmental, Health, Safety and Sustainability Committee and as a member of the Nominating and Corporate Governance Committee. Defendant Miller has received and continues to receive compensation for her role as a director. Furthermore, she solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy, Dowling, Joyce, Reece, Wagnon, and Walker, and herself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duty to monitor such controls over reporting and engagement in the

scheme, and consciously disregarded her duty to protect corporate assets. Also, Defendant Miller signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Miller is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Miller breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

100.    Additional reasons that demand on Defendant Reece is futile follow. Defendant Reece has served as a Company director since March 2019. He also serves as the Chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee. Defendant Reece has received and continues to receive compensation for his role as a director. Furthermore, he solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy, Dowling, Joyce, Miller, Wagnon, and Walker, and himself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duty to protect corporate assets. Also, Defendant Reece signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Reece is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons,

Defendant Reece breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

101.    Additional reasons that demand on Defendant Walker is futile follow. Defendant Walker has served as a Company director since 2015. She also serves as the chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee. Defendant Walker has received and continues to receive compensation for her role as a director as described above. Furthermore, she solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy, Dowling, Joyce, Miller, Wagnon, Reece, and herself to the Board, which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duty to protect corporate assets. Also, Defendant Walker signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Walker is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Walker breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

102.    Additional reasons that demand on Defendant Wagnon is futile follow. Defendant Wagnon has served as a Company director since November 2022. Furthermore, he solicited the 2024 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Dealy, Dowling, Joyce, Miller, Walker, Reece, and himself to the Board,

which allowed them to continue to breach their fiduciary duties to the Company and caused shareholders to approve the Amended Incentive Plan. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duty to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duty to protect corporate assets. Also, Defendant Wagnon signed, and thus personally made, the false and misleading statements and omissions in the 2023 10-K. Moreover, under the Amended Incentive Plan, Defendant Wagnon is eligible to receive stock awards under the Amended Incentive Plan, thereby materially benefiting from the adoption of the Amended Incentive Plan. For these reasons, Defendant Wagnon breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

103.    Additional reasons that demand on the Board is futile follow.

104.    Defendants Dealy, Reece, and Walker served as members of the Audit Committee during the Relevant Period. In violation of the Audit Committee Charter, Defendants Dealy, Reece, and Walker failed to adequately review and discuss the Company's Forms 10-K and 10-Q; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and Code of Ethics. Thus, Defendants Dealy, Reece, and Walker, further breached their fiduciary duties, are not disinterested, and demand is excused as to them.

105.    In violation of the Code of Ethics, the Director Defendants engaged in or permitted the scheme to cause the Company to issue materially false and misleading statements to the public, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate

assets, and violations of the Exchange Act. In violation of the Code of Ethics, the Director Defendants failed to avoid conflicts of interest or the appearance of conflicts of interest; maintain the accuracy of Company records; protect and ensure the efficient use of Company assets; comply with all applicable laws, rules, and regulations, and properly report violations of the Code of Ethics and applicable laws, rules, and regulations. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

106.     Compass Minerals has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against the Individual Defendants or others who were responsible for that wrongful conduct to attempt to recover for Compass Minerals any part of the damages Compass Minerals suffered and will continue to suffer thereby. Thus, any demand upon the Director Defendants would be futile.

107.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and are not capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

108.     The acts complained of herein constitute violations of fiduciary duties owed by Compass Minerals' officers and directors, and these acts are incapable of ratification.

109.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Compass Minerals. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Compass Minerals, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

110.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Compass Minerals to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability.  Accordingly, demand is futile in that event, as well.

111.    Thus, for all of the reasons set forth above, all of the Director Defendants, and, if not all of them, at least four of the Director Defendants, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

**Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

112.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

114.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

115.    Under the direction and watch of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, Gardiner, and Chisholm, the 2024 Proxy Statement failed to disclose that: (1) though the Company claimed its officers and directors adhered to the Code of Ethics, the Individual Defendants violated these policies either without waivers or without such waivers being disclosed; and (2) contrary to the 2024 Proxy Statement's descriptions of the Board's and its committees' risk oversight functions, the Board and its committees were not adequately exercising these functions and were causing or permitting the Company to issue false and misleading statements.

116.    The 2024 Proxy Statement also failed to disclose that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the

Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Individual Defendants were improperly interested in increasing their future compensation by seeking shareholder approval of the Amended Incentive Plan to increase the number of shares available under the Company's 2020 Incentive Plan; (4) the Company failed to maintain internal controls; and (5) in light of the above, the Individual Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

117.    In exercise of reasonable care, Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, Gardiner, and Chisholm should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2024 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on matters set forth for shareholder determination in the 2024 Proxy Statement, including but not limited to the re-election of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker to the Board and the approval of the Amended Incentive Plan.

118.    The false and misleading elements of the 2024 Proxy Statement led to, among other things, the re-election of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker to the Board, which allowed them to continue to breach their fiduciary duties to the Company, and the approval of the Amended Incentive Plan.

119.    The Company was damaged as a result of Defendants Dowling's, Dealy's, Joyce's, Miller's, Reece's, Wagnon's, Walker's, Gardiner's, and Chisholm's material misrepresentations and omissions in the 2024 Proxy Statement.

120.    Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

121.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

122.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Compass Minerals' business and affairs.

123.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

124.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Compass Minerals.

125.    In breach of their fiduciary duties owed to Compass Minerals, the Individual Defendants willfully or recklessly caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) testing on the Company's proprietary magnesium chloride-based aerial fire retardants did not confirm the safety of the Company's proprietary magnesium chloride-based aerial fire retardants; (2) as a result of the foregoing, the Individual Defendants overstated the prospects of the USFS awarding Compass Minerals a renewed contract for using its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season; (3) the Company failed to maintain internal controls; and (4) in light of the above, the Individual Defendants' statements about the Company's business,

operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

126.    The Individual Defendants further failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact, which renders them personally liable to the Company for breaching their fiduciary duties.

127.    Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain adequate internal controls.

128.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Compass Minerals' securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

129.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

130.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Compass Minerals has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

131.    Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

### THIRD CLAIM

**Against Individual Defendants for Unjust Enrichment**

132. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

133. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Compass Minerals.

134. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Compass Minerals that was tied to the performance or artificially inflated valuation of Compass Minerals or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct.

135. Plaintiff, as a shareholder and a representative of Compass Minerals, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

136. Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Abuse of Control

137. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

138. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Compass Minerals, for which they are legally responsible.

139. As a direct and proximate result of the Individual Defendants' abuse of control, Compass Minerals has sustained significant damages. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty,

Compass Minerals has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

140.    Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants for Gross Mismanagement

141.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

142.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Compass Minerals in a manner consistent with the operations of a publicly held corporation.

143.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Compass Minerals has sustained and will continue to sustain significant damages.

144.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

145.    Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

## SIXTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

146.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

147.    The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of the shareholders and the Company.

148.     As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Compass Minerals to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

149.     As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

150.     Plaintiff, on behalf of Compass Minerals, has no adequate remedy at law.

## SEVENTH CLAIM

### Against Defendants Crutchfield, Dowling, Crenshaw, and Hood for Contribution Under Sections 10(b) and 21D of the Exchange Act

151.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

152.     Compass Minerals and Defendants Crutchfield, Dowling, Crenshaw, and Hood are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Crutchfield's, Dowling's, Crenshaw's, and Hood's willful and/or reckless violations of their obligations as officers and/or directors of Compass Minerals.

153.     Defendants Crutchfield, Dowling, Crenshaw, and Hood, because of their positions of control and authority as officers and/or directors of Compass Minerals, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Compass Minerals, including the wrongful acts complained of herein and in the Securities Class Action.

154.    Accordingly, Defendants Crutchfield, Dowling, Crenshaw, and Hood are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

155.    As such, Compass Minerals is entitled to receive all appropriate contribution or indemnification from Defendants Crutchfield, Dowling, Crenshaw, and Hood.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Compass Minerals, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Compass Minerals;

(c)    Determining and awarding to Compass Minerals the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Compass Minerals and the Individual Defendants to take all necessary actions to reform and improve Compass Minerals' corporate governance and internal procedures to comply with applicable laws and to protect Compass Minerals and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop

and implement procedures for greater shareholder input into the policies and guidelines of the Board;

       2.  a provision to permit the shareholders of Compass Minerals to nominate at least five candidates for election to the Board; and

       3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

   (e)    Awarding Compass Minerals restitution from the Individual Defendants, and each of them;

   (f)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

   (g)    Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: October 30, 2024           Respectfully Submitted,

                      **WALTERS RENWICK RICHARDS**
                      **SKEENS & VAUGHAN, P.C.**
                      By: */s/ Karen Wedel Renwick*
                      Karen Wedel Renwick, D. Kan. #12095
                      R. Frederick Walters, Ks. Dist. #70561
                      1100 Main Street, Suite 2500
                      Kansas City, Missouri  64105
                      Telephone: (816) 421-6620
                      Fax: (816) 421-4747
                      krenwick@wrrsvlaw.com
                      fwalters@wrrsvlaw.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net